The STATE of Ohio, Appellee,

v.

PHILPOT, Appellant.

[Cite as *State v. Philpot* (2001), 145 Ohio App.3d 231.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA99–12–215.

Decided Aug. 13, 2001.

232

*Robin N. Piper,* Butler County Prosecuting Attorney, and *Patrick G. Moeller,* Assistant Prosecuting Attorney, for appellee.

*Fred Miller,* for appellant.

WILLIAM W. YOUNG, Presiding Judge.

Defendant-appellant Jared W. Philpot[1] appeals his convictions in the Butler County Court of Common Pleas for aggravated robbery, theft, and theft of drugs.

Appellant was indicted in May 1999 on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first degree felony, with a gun specification under R.C. 2941.145, one count of theft in violation of R.C. 2913.02(A)(1), a fifth degree felony, and one count of theft of drugs in violation of R.C. 2913.02(A)(1), a fourth degree felony. The charges stemmed from an incident that occurred on March 12, 1999, wherein appellant and another individual allegedly robbed the Darlington Pharmacy in Fairfield, Ohio. A jury trial held on September 21–22, 1999, revealed the following facts:

Alyssa Darlington ("Darlington") is the manager and pharmacist of Darlington Pharmacy. The pharmacy closes at 6:00 p.m. On the evening of the incident, ten

---

1. Although appellant's first name appears interchangeably in the record as either Jared or Jarrod, a review of several pleadings signed by appellant clearly shows that he signed his first name "Jared."

to fifteen minutes before closing time, appellant and another individual walked into the store. The other individual stood back by the door while appellant approached Darlington, who was at the prescription counter. Unlike his accomplice, who was wearing a hat and "mirror" sunglasses, appellant was not wearing any kind of "head gear" and nothing was covering his face.

Once at the prescription counter where he stood approximately one and a half to two feet away from Darlington, appellant told her "Sorry to have to do this. Just do as you're told and no one will get hurt." Appellant then threatened her if she hit the silent alarm. Appellant gave Darlington a list of drugs and ordered her to put them in a bag. Except for one drug, all the listed drugs were controlled substances such as Vicodin, Valium, and Lorecet. When Darlington went to the cash register to get a bag, appellant followed her on the other side of the counter. There, appellant pulled up his shirt to reveal a black gun in his waistband.

While Darlington was putting the listed drugs in the bag, appellant asked for money. Darlington put $1,200 in the bag. Appellant asked for additional drugs, including morphine. Appellant followed Darlington in her office where she stored the morphine. Darlington put the morphine in the bag and appellant ordered her to lie down on the floor five minutes or "[she]'d be in trouble." The two men left the store but not before they disabled the store's phone. Five minutes later, Darlington called the police from a neighboring business. The robbery had lasted five to ten minutes. At trial, Darlington testified that she was able to observe appellant's facial features during the robbery for about five minutes.

Darlington provided a description of the two men to the police officers dispatched to the pharmacy. That same evening, Darlington went to the police station, where she and a police officer drew a composite of appellant. Neither Darlington nor the officer was satisfied with the composite.

During the morning of March 16, 1999, Colerain Township Police Officer Doug LaMey pulled appellant and a female passenger over for driving fifty-two m.p.h. in a thirty-five m.p.h. zone. Unable to provide a driver's license or the name of the owner of the car he was driving, appellant was put in the police cruiser. While talking to the passenger, Officer LaMey observed the barrel of a black handgun poking out from underneath the driver's seat. The gun had a fully loaded magazine. During a subsequent search of the car (the circumstances of which will be later detailed under appellant's first assignment of error), the officer found a duffel bag on the back seat of the car. The bag contained nine prescription bottles with a Darlington Pharmacy label on each of them. Appellant was transported to the Hamilton County Sheriff's Department. Although appellant admitted having possession of the drugs found in the car, he denied any

involvement in the robbery. Appellant, however, provided names of other individuals who may have been involved in the robbery, including Jimmy Selvage.

Following appellant's questioning, photo lineups including a picture of appellant were prepared and given to the Fairfield Police Department. The following day, on March 17, 1999, Sergeant Don Garrett of the Fairfield Police Department showed the photo lineups to Darlington, who identified appellant as the individual who approached the prescription counter and demanded the drugs and the money. Later that day, the police went to a hotel in Warren County. In a room occupied by Jimmy Selvage, the police recovered twelve prescription bottles from the Darlington Pharmacy, several weapons, and $837 in cash. Between the drugs found in the car driven by appellant and those found in the hotel room, the police recovered twenty-one of the twenty-three prescription bottles stolen from the pharmacy.

The next day, on March 18, 1999, officer LaMey approached appellant at the jail and told him that he was being charged with possession of drugs. Appellant asked whether he "was being charged with the robbery of Darlington Pharmacy." After the officer told him he did not know, appellant stated, "That girl didn't pick me out of a line up did she?" Both statements were made before the officer said anything about a pharmacy or a "girl."

On September 22, 1999, a jury found appellant guilty as charged. By entry filed November 15, 1999, appellant was sentenced to a nine-year term of imprisonment for aggravated robbery, a consecutive three-year term of imprisonment for the gun specification, a consecutive seventeen-month term of imprisonment for theft of drugs, and a concurrent eleven-month term of imprisonment for theft. Appellant now appeals and raises three assignments of error.

■ In his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress because the search exceeded the justification underlying the stop. The state responds that based upon the circumstances of the stop, the officers had probable cause to conduct the search.

Appellant filed his motion to suppress on June 24, 1999. A hearing on the motion revealed that mid-morning on March 16, 1999, officer LaMey clocked appellant driving at fifty-two m.p.h. in a thirty-five m.p.h. zone on West Galbraith Road. Appellant's vehicle had Kentucky license plates. The officer activated his overhead lights and with his siren turned on and off, followed appellant. Appellant did not stop but continued to drive approximately three-fourths of a mile before pulling over. The officer testified that he was concerned by the "very unusual amount of time" it took for appellant to pull over. The officer also testified that during that period of time, appellant was not facing forward while driving but rather, was "making movements to his right and left."

The officer approached appellant on the driver's side and asked him for his driver's license. Appellant replied that he did not have a license. Appellant then stated that he had a Florida driver's license but not with him. The officer asked appellant to step out of the car and follow him to his cruiser. While walking back to the cruiser, the officer asked appellant about the ownership of the car. Appellant replied that it was his girlfriend's car. When asked if the female passenger in the car was his girlfriend, appellant said no and then told the officer that the car belonged to a friend of his girlfriend. Now suspicious that the vehicle was stolen, the officer patted appellant down and had him sit in the back of the cruiser. The officer then approached the passenger on the passenger's side to ask her about the car's ownership. The passenger did not know who the owner was.

While talking to the passenger, the officer observed the barrel of a handgun sticking out from underneath the driver's seat. The officer handcuffed the passenger, put her in the back of the cruiser, and read both her and appellant their *Miranda* rights. The officer went back to the car and retrieved the handgun. Although the gun did not have a round in its chamber, it had a fully loaded magazine. After another police officer arrived at the scene, Officer LaMey put the passenger in the other officer's cruiser, and advised appellant that he was under arrest for carrying a concealed weapon. The officer then went back to the car and started searching it for additional weapons. On the rear seat of the car, behind the passenger's seat and within reach of the driver, was a duffel bag, "unzipped a half an inch." While squeezing the bag with his hands to feel it from the outside, the officer felt numerous hard objects inside. The officer opened the bag and discovered nine prescription bottles from the Darlington Pharmacy.

By entry filed July 28, 1999, the trial court denied appellant's motion to suppress. The trial court found that once the handgun was observed in plain view, the officer had "probable cause to search the entire motor vehicle and all containers."

■■■ An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498, 502–503. When considering a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036.

Appellant does not contest the propriety of the initial stop, the officer's justification for initially questioning appellant and then placing him in the back of the cruiser, or the officer's observation and subsequent seizure of the handgun. Instead, appellant argues that after the officer's search of the car yielded no additional weapons, and after his squeezing of the bag did not alert him to the fact that a weapon might be inside, the officer had no reason to search the bag.

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require police to obtain a warrant based upon probable cause before they conduct a search. However, the warrant requirement is subject to a number of well-established exceptions. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576. When a police officer has probable cause to believe that a vehicle contains evidence of a crime, contraband, or other evidence that is subject to seizure, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all moveable containers and packages, that could logically conceal the objects of the search. *United States v. Ross* (1982), 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572, 594.

"Probable cause" is defined as "a reasonably strong suspicion supported by facts and circumstances sufficiently strong in themselves to warrant a prudent person in believing an accused person had committed or was committing an offense." *State v. Ratcliff* (1994), 95 Ohio App.3d 199, 205, 642 N.E.2d 31, 35. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause simply to shrug his or her shoulders and allow a crime to occur or a criminal to escape. *Adams v. Williams* (1972), 407 U.S. 143, 145–146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–617; *State v. Payne* (June 1, 1999), Butler App. No. CA98–12–244, unreported, at 11–12, 1999 WL 441776. Rather, if during the initial stop, the officer observes "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation." *State v. Robinette* (1997), 80 Ohio St.3d 234, 241, 685 N.E.2d 762. 768.

In the case at bar, the officer observed appellant making furtive movements before he finally pulled over. The vehicle driven by appellant had Kentucky license plates. Appellant stated that he had a Florida's driver's license but not on him. Appellant gave two different answers concerning the owner of the car, while the passenger did not know who the owner was. The officer discovered a loaded weapon partially hidden under the driver's seat. We find that these facts provided, in combination, the requisite probable cause. Although no single factor is dispositive, the officer had more than a "mere suspicion or hunch," and the search of the vehicle and its contents, including the duffel bag, was justified based upon probable cause. See *Payne,* Butler App. No. CA98–12–244, unreported.

That the search revealed that the bag did not contain weapons is irrelevant, as it uncovered evidence indicating that appellant was engaged in different criminal activity. See *State v. Kilgore* (June 28, 1999), Butler App. No. CA98–09–201, unreported, 1999 WL 452235. The trial court therefore properly denied appellant's motion to suppress and appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that the trial court erred by overruling his request for a jury instruction on eyewitness identification testimony pursuant to *United States v. Telfaire* (C.A.D.C.1972), 469 F.2d 552 (the "*Telfaire* instruction"). The trial court gave instead the standard jury instruction on credibility of witnesses found in the Ohio Jury Instructions. 4 Ohio Jury Instructions (2001) 41, Section 405.20. Appellant contends that Darlington's uncorroborated identification of appellant when she was "scared, rushed, and drained" and the "significant differences between [Darlington's composite] and how [appellant] looked in real life" mandated a *Telfaire* instruction.

The objective of a *Telfaire* instruction is to alert the jury to the potential unreliability of eyewitness testimony on the issue of identity and of the inherent unreliability of eyewitness testimony in general. See *State v. Guster* (1981), 66 Ohio St.2d 266, 20 O.O.3d 249, 421 N.E.2d 157. Although the Supreme Court of Ohio approved the substance of the *Telfaire* instruction in *Guster*, "[a] trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions." *Id.* at syllabus.

In addition, a trial court need not give requested instructions if the instructions it gives are adequate. *State v. Cook* (1992), 65 Ohio St.3d 516, 525, 605 N.E.2d 70, 81.

Upon reviewing the record, we find that the trial court did not err by refusing to give a *Telfaire* instruction. While appellant is correct that neither Darlington nor the drawing officer was satisfied with the composite, we do not believe that it mandated a *Telfaire* instruction. Darlington, the eyewitness, testified that she had an opportunity to observe appellant's facial features for about five minutes from a distance of one and a half to two feet. Appellant was not wearing any kind of "head gear" and nothing was covering his face. Five days after the robbery, Darlington selected appellant's photograph from the photo lineup as the individual who had robbed her. There is no evidence that there was any equivocation in Darlington's identification of appellant from the photo lineup. Darlington testi-

fied that she was one hundred percent certain that appellant was the robber. We note that during the trial, Darlington identified appellant as the robber and that there was no conflicting testimony about identification.

Although the trial court refused to give appellant's proposed jury instructions on eyewitness identification, it did give part of the *Telfaire* instruction regarding factors the jury should consider in evaluating the identification testimony. In addition, the trial court gave an instruction on reasonable doubt and made several references in the jury instructions to the fact that appellant could not be convicted unless the state proved his guilt beyond a reasonable doubt.

After reviewing the jury instructions as a whole, we are convinced that under the circumstances of this case, the jury was "plainly aware of the need for finding the identification of appellant as the offender beyond a reasonable doubt without the assistance of the special instructions requested by appellant." *State v. Pohlabel* (Aug. 31, 1983), Butler App. No. CA82–09–094, unreported, at 12, 1983 WL 4466. We therefore find that the trial court's instruction adequately alerted the jury of its duty to carefully weigh the reliability of eyewitness testimony, and to determine the identity of the perpetrator beyond a reasonable doubt. We find no abuse of discretion in this matter. Appellant's second assignment of error is overruled.

■ In his third assignment of error, appellant argues that the trial court erred by refusing to merge the two counts of theft and theft of drugs with the count of aggravated robbery. Appellant contends that the offenses were allied offenses of similar import and, thus, he should have been convicted of only one offense. During the sentencing hearing, appellant moved the trial court to merge the two counts of theft with the aggravated robbery count. The trial court implicitly overruled appellant's motion by sentencing him on all three counts.

Allied offenses of similar import are governed by R.C. 2941.25, which provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

■ When determining whether two or more offenses are allied offenses of similar import, "[c]ourts should assess, by aligning the elements of each crime in

the abstract, whether the statutory elements of the crimes 'correspond to such a degree that the commission of one crime will result in the commission of the other.' " *State v. Rance* (1999), 85 Ohio St.3d 632, 638, 710 N.E.2d 699, 705. The Supreme Court of Ohio has held that theft is an allied offense of similar import to aggravated robbery, in that theft does not require the proof of any element not required to be proved for the offense of aggravated robbery. *State v. Johnson* (1983), 6 Ohio St.3d 420, 423, 6 OBR 466, 468–469, 453 N.E.2d 595, 598–599, reversed on other grounds in *Ohio v. Johnson* (1984), 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425.

That does not end the analysis, however. "[I]f the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." *Rance* at 638–639, 710 N.E.2d at 705. Although the trial court sentenced appellant on all three counts, thereby implicitly overruling appellant's motion to merge the theft counts with the aggravated robbery count, it made no finding as to whether appellant committed the aggravated robbery and thefts separately or with a separate animus. Absent such finding, we find that the trial court erred by separately sentencing appellant for the three offenses. We therefore reverse appellant's sentences and remand the matter to the trial court for a resentencing hearing solely for the purpose of determining whether appellant committed the offenses of aggravated robbery, theft, and theft of drugs separately or with a separate animus. Appellant's third assignment of error is well taken and sustained.

Judgment affirmed in part, reversed in part, and cause remanded for resentencing consistent with this opinion.

*Judgment accordingly.*

VALEN and POWELL, JJ., concur.