[Cite as *State v. Simpson*, 2019-Ohio-1493.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-06-121 |
| | : | O P I N I O N |
| - vs - | | 4/22/2019 |
| | : | |
| ROGER RICHARD MICHAEL SIMPSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No.CR2017-06-0927

Michael T. Gmoser, Butler County Prosecuting Attorney, John Heinkel, Government Service Center, 315 High Street, 11th Floor, Hamilton, Ohio, 45011, for appellee

Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio, 45040, for appellant

**PIPER, J.**

{¶ 1}  Appellant, Roger Simpson, appeals his convictions in the Butler County Court of Common Pleas for multiple counts of rape, sexual battery, kidnapping, complicity to rape, and complicity to sexual battery.

{¶ 2}  Together with his codefendants, Rodney Gibson and Elijah Mincy, Simpson raped the victim, "B.H.", multiple times and in multiple ways.  The evening started when B.H. and Rodney were guests at the same party.  B.H. had been drinking alcohol that evening, and at one point, threw up and "blacked out."  B.H. and Rodney left the party and went to another apartment where B.H. went into a bedroom to rest.  Rodney accompanied B.H. into

the room and made sexual advances toward her, which she declined. Simpson then entered the room, got into bed with B.H., and raped her multiple times.

{¶ 3} Eventually, B.H. convinced Simpson to let her use the bathroom, during which time, Simpson stood over her as she sat on the toilet. Simpson would not let B.H. leave the apartment and forcibly returned her to the bedroom where the sexual batteries continued. Simpson spit on B.H. and smacked her before raping her again. Simpson penetrated the victim's vagina and anal cavity with his finger and then raped her both anally and vaginally. Simpson then held the victim down so that Elijah could orally rape and digitally penetrate the victim.

{¶ 4} B.H. went to the hospital after she was able to leave the apartment, where she was diagnosed with abrasions, scratches, five labial tears, and two tears to her anus, all of which represented repetitive and forceful trauma to the areas. A pelvic exam also indicated the presence of blood and trauma to the cervix. Semen, blood, and other fluids collected during the medical examination revealed Simpson's DNA as a major contributor to samples taken from the victim's vagina, anus, ear, thighs, and behind.

{¶ 5} Simpson denied engaging in any sexual activity with the victim when questioned by police, and pled not guilty to the 23 charges brought against him. A jury found Simpson guilty on all counts after a three-day trial, and the trial court asked the parties to submit a sentencing memorandum on allied offenses. The state filed a memorandum, and defense counsel stated agreement with the state's analysis without filing a memorandum.

{¶ 6} The trial court merged several of Simpson's convictions and imposed an aggregate sentence of 51 years. Simpson now appeals the trial court's decision, raising two assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN SENTENCING APPELLANT.

**{¶ 9}** Simpson argues that the trial court erred in sentencing him because more of his convictions should have been merged.

**{¶ 10}** Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Conrad*, 12th Dist. Butler No. CA2018-01-016, 2018-Ohio-5291, ¶ 43. If any of the following occurs, the defendant may be convicted and sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance - in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

**{¶ 11}** "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *Conrad* at ¶ 44.

**{¶ 12}** Simpson argues in his brief that "some of Appellant's Rape convictions should have been merged as well as the Kidnapping conviction * * *."[1] In support, Simpson alleges that not all the offenses he committed caused separate harm to the victim. The record

---

1. Simpson also argues that the trial court erred by not making separate findings of fact on the record regarding the allied offenses issue. Simpson relies on *State v. Philpot*, 145 Ohio App.3d 231(12th Dist.2001) in which this court remanded a case to the trial court because it failed to determine whether appellant's crimes were allied offenses. However, we did not pronounce a requirement in *Philpot* that the trial court must issue findings of fact when making its allied offenses determination. The record is clear in this case that the trial court made a determination, as it is required to do, regarding allied offenses, and merged the majority of Simpson's convictions

indicates otherwise.

{¶ 13} According to R.C. 2907.02(A)(2), "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 14} The three rape convictions that were not merged for purposes of sentencing were specific to (1) the original vaginal rape, (2) the vaginal rape after Simpson permitted the victim to go to the bathroom, and (3) the anal rape. Simpson committed three separate acts of rape, each of which caused an identifiable harm to the victim. She was forced to incur Simpson's forced sexual conduct when he raped her the first time soon after entering the room where she was trying to rest. Simpson then forcibly raped the victim after watching over her as she used the bathroom and after forcing her back into the bedroom. This second rape occurred after the first rape had already been completed. Simpson then forcibly raped the victim anally, with his separate sexual conduct imposed upon a different part of her body. Thus, the crimes are not allied where Simpson's conduct was separate each time he raped the victim, and the harm she incurred is identifiable as it relates to the three separate charges.

{¶ 15} Simpson also argues that the kidnapping charge should merge. However, he does not assert with which crime the kidnapping charge should merge. Assuming arguendo that Simpson suggests the kidnapping should have merged with any of the three rape charges that remained, we find that kidnapping is not an allied offense to the rapes or to any other charges that remained after sentencing.

{¶ 16} According to R.C. 2905.01(A)(3), "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of

for the purposes of sentencing. Thus, the trial court did not err in not making separate factual findings on the record regarding the merger decision.

- 4 -

the other person, for any of the following purposes: To terrorize, or to inflict serious physical harm on the victim or another[.]"

{¶ 17} The kidnapping charge stemmed from Simpson not permitting the victim to leave the apartment, taking her to the bathroom only to stand over her and watch as she sat on the toilet, and then forcibly returning her to the bedroom where he spit on her, smacked her, and continued to deny her ability to leave. This conduct was separate from the rapes, and shows a separate animus by Simpson to degrade and terrorize the victim. Thus, Simpson has failed to demonstrate that the kidnapping charge should have been merged with any of his other crimes.

{¶ 18} After reviewing the record, we find that the trial court did not err by not merging the rape and kidnapping charges when sentencing Simpson. As such, Simpson's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 21} Simpson argues in his second assignment of error that he did not receive effective assistance of counsel.

{¶ 22} To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id. at 694*.

{¶ 23} The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective

assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. The scope of cross-examination of a witness falls within the ambit of trial strategy and debatable trial tactics do not establish ineffective assistance of counsel. *State v. Evans*, 12th Dist. Warren No. CA2017-04-049, 2018-Ohio-916, ¶ 75.

{¶ 24} Simpson first argues that his counsel was ineffective for not cross-examining the state's expert witnesses, including the Sexual Assault Nurse Examiner who examined the victim and the DNA expert. However, Simpson is not able to identify how the results of the trial would have been different had his trial counsel cross-examined these witnesses. Simpson's defense at trial was that his sexual contact with the victim was consensual. As such, it was not necessary to impeach the witnesses regarding Simpson's DNA being found on the victim because such would be expected if a consensual sexual encounter had occurred.

{¶ 25} Even if Simpson's trial counsel had asked whether the tears, bruises, and scratches found on the victim could have been the result of a consensual encounter, there is no indication in the record that the nurse examiner would have been able to testify to how the injuries occurred, only that they did in fact occur.

{¶ 26} Simpson's speculation as to what the nurse examiner could have testified to does not overcome the strong presumption that Simpson's trial counsel was executing sound trial strategy by not questioning the nurse examiner who just as easily could have testified that such injuries were highly indicative of nonconsensual intercourse or that such injuries, in her experience, always indicated nonconsensual intercourse. There is simply no way to demonstrate that the results of Simpson's trial would have been different had the cross-examination occurred. This is especially true where the jury saw the victim testify and could

determine her credibility regarding the nature of the sexual contact.

{¶ 27} Simpson next argues that his trial counsel was ineffective for not allowing him to testify in his own defense. The record indicates that Simpson only stated his desire to testify after the trial was over, after the jury returned its guilty verdicts, and after the trial court revoked Simpson's bond. Simpson explained to the court that his attorney had advised him not to testify in fear of self-incrimination on the stand. This admission is a clear indication that Simpson's trial counsel was executing sound trial strategy by not having Simpson testify in his own defense.

{¶ 28} The jury could have learned things about the defendant, such as through cross-examination and impeachment, that would have supported the state's case, or Simpson himself could have said or done something to damage his defense. We will not say that trial counsel's decision to advise Simpson against taking the stand was deficient or that it fell below an objective standard of reasonableness.

{¶ 29} Moreover, there is no indication that had Simpson testified, the results of his trial would have been different. Even if Simpson had told his side of the story, there is no indication in the record that the jury would have discounted the victim's testimony, or that of the other state's witnesses, and believed his account of a consensual encounter. Mere speculation and unsupported suggestions do not demonstrate that Simpson suffered prejudice because of his counsel's trial strategy in this case.

{¶ 30} Lastly, Simpson argues that his counsel was ineffective for not filing a sentencing memorandum contra to the state's sentencing memorandum in which it discussed the allied offenses issue. However, and given our analysis of Simpson's first assignment of error, the trial court did not err in sentencing Simpson so that any opposing memorandum would have been in vain. The fact that defense counsel agreed with the state's analysis of the allied offense issue, which the trial court eventually adopted, does not mean that trial

counsel's action in not filing a memorandum was deficient.

{¶ 31} Having reviewed the record, we overrule Simpson's second assignment of error.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.