The STATE of Ohio, Appellee,

v.

SELLERS, Appellant.

[Cite as *State v. Sellers*, 173 Ohio App.3d 60, 2007-Ohio-4681.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88535.

Decided Sept. 13, 2007.

William D. Mason, Cuyahoga County Prosecuting Attorney, and T. Allan Regas and Michael D. Horn, Assistant Prosecuting Attorneys, for appellee.

Donald Gallick, for appellant.

---

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Defendant-appellant Joseph Sellers appeals his conviction and sentence for involuntary manslaughter. For the reasons that follow, we affirm the conviction and modify the sentence.

{¶ 2} Appellant was found guilty in 1995 of aggravated assault and sentenced to three to five years in prison. He served his time and completed the terms of his probation. In July 2003, the victim of appellant's assault, Anthony Payne, who had been in a vegetative state since the assault, died. In January 2004, appellant was charged with involuntary manslaughter in violation of R.C. 2903.04. Appellant filed a motion for an expert witness at the state's expense, which the trial court denied. Appellant thereafter pleaded no contest and the court sentenced him to seven years in prison, with credit for 1,437 days served from the prior assault conviction. Appellant appealed the trial court's judgment denying him an expert witness at the state's expense. This court found that the trial court abused its discretion by denying appellant's motion and remanded for a new trial. *State v. Sellers*, Cuyahoga App. No. 85611, 2005-Ohio-6010, 2005 WL 3030913.

{¶ 3} On remand, the trial court raised appellant's bond from $25,000 to $200,000. This court granted appellant's writ of habeas corpus and reinstated the original bond of $25,000. *State ex rel. Sellers v. McFaul*, Cuyahoga App. No. 87866, 2006-Ohio-1936, 2006 WL 1029953.

{¶ 4} Prior to trial, the court granted the state's motion to apply collateral estoppel so that the jury could be informed that the state had already proven most of the involuntary-manslaughter elements in the 1995 trial and, therefore, did not need to prove all of the elements in this case.[1]

---

1. No error was alleged by appellant as to this ruling. This decision does *not* affirm the application of the doctrine of collateral estoppel in this matter.

{¶ 5} At trial, defense counsel objected to the state publishing the autopsy photographs of Payne to the jury, prior to their admission into evidence.[2] The state presented three witnesses on its behalf: Payne's mother, the investigating detective, and Dr. Erica Armstrong, Chief Deputy Coroner in the Cuyahoga County Coroner's Office.

{¶ 6} Dr. Armstrong testified that a blunt impact to Payne's head injured his brain and caused him to be in a persistent vegetative state. Dr. Armstrong also testified in regard to the toxicology report prepared in conjunction with the autopsy of Payne, noting that Payne had morphine in his system. She further testified that Payne had pneumonia at the time of his death, and she stated that the cause of death was "acute bronchopneumonia, due to remote blunt impact to head with skull and brain injury." Dr. Armstrong explained that a series of complications, including infections and the pneumonia, were linked to the head injury Payne suffered and that was the basis of her conclusion as to the manner of death, i.e., homicide.

{¶ 7} Dr. Armstrong testified that she also reviewed two reports from appellant's expert, Dr. Donald Schaffer. She noted that in Dr. Schaffer's first report, he agreed with her finding that Payne's death was caused by "acute bronchopneumonia due to remote blunt impact to head with skull and brain injury." Dr. Armstrong noted that Dr. Schaffer, however, rendered a second report three months later, in which, as she summarized, he opined that the cause of death was a morphine overdose. Dr. Armstrong testified that in his second report, Dr. Schaffer misstated the level of morphine, finding it to be 117 milligrams per liter. Dr. Armstrong testified, however, that the correct level of morphine was 117 nanograms per liter, a thousand times less than the amount relied on by Dr. Schaffer in his second report. According to Dr. Armstrong, 117 nanograms per liter was not a lethal dose of morphine, but 117 milligrams per liter would be.

{¶ 8} At the conclusion of the state's case, the defense made a Crim.R. 29 motion for acquittal, which was denied. The defense presented the testimony of Dr. Schaffer and appellant. Dr. Schaffer admitted that in his first report he agreed with Dr. Armstrong's finding as to Payne's cause and manner of death. Dr. Schaffer testified that after he wrote his first report, he reviewed further records (i.e., the toxicology reports) and admitted that he made an error in reading them. In particular, Dr. Schaffer acknowledged that the amount of

---

2. The trial court did not allow objections made during opening statements to be put on the record at the time the objection was attempted to be made. The record reflects, however, that defense counsel objected during the state's opening statement because the assistant prosecuting attorney published the photos to the jury. At the close of the state's case, the trial court afforded defense counsel an opportunity to state his objection on the record in regard to the photos.

morphine in Payne's system was not in the "massive dosages" but was "a substantial dosage" that would "have to be listed as contributing cause of death." The morphine level in Payne's system was noted as a contributing cause of death in Dr. Schaffer's second report.

{¶ 9} At the conclusion of its case, the defense renewed its Crim.R. 29 motion, which was again denied.

{¶ 10} In his first assignment of error, appellant contends that he was denied a fair trial because of the "structural error" caused by the "biased judge."

{¶ 11} "Structural error" is an error that " 'transcends the criminal process' by depriving a defendant of those 'basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " *State v. Drummond*, 111 Ohio St.3d 14, 2006–Ohio–5084, 854 N.E.2d 1038, quoting *Rose v. Clark* (1986), 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460. Trial by a biased judge has been cited as one of the very limited examples of structural error. Id. Judicial bias is "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 58 O.O. 315, 132 N.E.2d 191, paragraph four of the syllabus.

{¶ 12} In support of his bias claim, appellant first cites another claim of bias that was brought against the trial judge. As the claim involves a totally different case, we will not consider it as part of appellant's claim in this case. Further, in that case, *State v. Wilbon*, Cuyahoga App. No. 82934, 2004-Ohio-1784, 2004 WL 743881, this court found the claim unsubstantiated.

{¶ 13} Appellant also relies on this court's reversing the trial judge's decision denying his motion for an independent expert at the state's expense and raising his bond. Upon consideration thereof, we do not find that the trial court's ruling and action on these matters constituted a "hostile feeling or spirit of ill will" so as to amount to bias or prejudice.

{¶ 14} Appellant further argues that the trial judge's behavior toward counsel during trial demonstrated her prejudice or bias. First, appellant claims that counsel was "chastised" for introducing himself to a witness. The exchange was as follows:

{¶ 15} "Q. Dr. Armstrong, I'm Donald Gallick, I represent Joseph Sellers. I don't think we have met, but we have spoken on the phone at least once. I don't know if you remember or not.

{¶ 16} "The Court: Was there a question there, or were you asking her to answer a question?

{¶ 17} "Mr. Gallick: No, your Honor, I was just introducing myself.

{¶ 18} "The Court: I'll scratch that from the record then and instruct the jury to disregard it and ask the counsel not to colloquy, but ask a question."

{¶ 19} Upon review, we do not find that the above demonstrated a "hostile feeling or spirit of ill will" so as to amount to bias or prejudice. The court simply told defense counsel to ask the witness a question rather than "colloquy with" the witness.

{¶ 20} Appellant next alleges that the judge prevented counsel from asking Dr. Armstrong why she did not correct a numerical mistake involving the toxicology report. Upon review, the transcript does not reflect that counsel was prevented from asking such a question. Counsel was questioning Dr. Armstrong about Dr. Schaffer's, the defense expert's, misinterpretation of data in Dr. Armstrong's report. Counsel asked Dr. Armstrong when she had first learned of the misinterpretation, the assistant prosecuting attorney objected to the form of the question, and the court sustained the objection. Defense counsel then rephrased the question and Dr. Armstrong answered it.

{¶ 21} Appellant further argues that the trial court prevented his witness (Dr. Schaffer) from approaching the state's dry erase board to comment on numbers Dr. Armstrong put on the board. The record indicates, however, that Dr. Schaffer was able to see the board and testify as to the numbers written on it by Dr. Armstrong.

{¶ 22} Appellant also contends that the trial court allowed the state to call two witnesses, Harriet Thomas (Payne's mother) and Detective Johnstone, to testify about the 1995 facts, but he was not allowed to so testify when he took the stand. Thomas did not testify to specifics regarding the 1995 facts. She testified that she was only aware of where Payne was going on the day of the incident (without any details) and the next time she saw him he was in a coma. In regard to Detective Johnstone's testimony, on direct examination, the state simply elicited testimony that he was assigned to the case the day after the incident and that appellant was arrested in connection with it. It was on cross-examination that defense counsel got into the specific facts of the incident, eliciting testimony from Johnstone that Payne had used a bottle and broomstick as weapons against appellant. When appellant testified, he stated that Detective Johnstone's testimony about the bottle and broomstick being used against him was accurate. Therefore, it was the defense, not the state, that elicited testimony about the 1995 facts. Moreover, appellant confirmed that Detective Johnstone's testimony about the facts was accurate and, therefore, there was no prejudice to him.

{¶ 23} Finally, in this first assignment of error, appellant claims that further evidence of the trial judge's bias was demonstrated during sentencing, when the court increased his sentence. We address this issue in appellant's fifth assignment of error.

{¶ 24} Based on the above, we do not find that the trial judge displayed hostility or ill will toward appellant or his counsel, so as to deprive appellant of a fair trial. The first assignment of error is overruled.

{¶ 25} In his second assignment of error, appellant contends that the trial court violated his due process rights by denying defense counsel access to the record to make timely, specific objections.

{¶ 26} Appellant cites *Cleveland v. Buckley* (1990), 67 Ohio App.3d 799, 588 N.E.2d 912, in support of his argument. In *Buckley*, the trial court prevented counsel from making legal arguments and objections on the record from the close of evidence until the jury returned its verdict. The defendant moved for a new trial and wanted to put objections and make legal arguments on the record as to why the motion should have been granted. This court found the trial court's actions to be an abuse of discretion because it violated the defendant's constitutional right to a fair trial and it hindered this court's task of determining whether the defendant did in fact receive a fair trial. Id. at 811, 588 N.E.2d 912.

{¶ 27} Here, the trial court did not deny counsel access to the record; it restricted access to the record during certain times. Specifically, the court did not allow objections to be made during opening statements or the reasons for an objection to be placed on the record at the time the objection was made, unless it determined it necessary. At the close of presentation of evidence, the court then allowed the parties to place any objections and legal argument they wished to make on the record. The court explained its procedure:

{¶ 28} "And it is also in every trial I preside over the Court's prerogative to at the side bar conference make a determination whether or not you need a record right at that moment. I always allow counsel to make their record, and I always allow counsel ample opportunity to proffer any exceptions they may have to any of the Court's rulings.

{¶ 29} "The way it works is this: This Court does not take speaking objections in the presence of the jury. Should the Court need some edification, I'll ask you to approach. If you're at the trial table and I need just a little bit of edification, I may state grounds and ask you to briefly do that. If I need further edification I will do that at side bar. If the Court needs to make a record over a ruling, the Court would.

{¶ 30} "Should defense counsel or the State of Ohio move to make a record simply because you disagree with the Court's ruling, that would be called

proffering an exception, and I do not hold up the jury while we do that. That's why I gave them extra time for lunch and I allow counsels [sic] to proffer objections and make a full and complete record at that time."

{¶ 31} With the exception of objections made during opening statements, the court appeared to have allowed counsel to make timely objections on the record. We do not find that the court erred by generally restricting the time at which counsel could elaborate on objections. In regard to not allowing counsel to object during opening statement, we find that under the circumstances of this case, the trial court did err, however. The record indicates that counsel objected to the assistant prosecuting attorney publishing the autopsy photos to the jury because the defense was going to object to their admissibility. The court explained that it did not entertain defense counsel's objection because "they are not actually evidence and admitted into evidence until such time as the Court rules upon their admissibility. If they are admissible, then I send them into the jury."

{¶ 32} The problem with the court's procedure, given the circumstances of this case, is that it allowed the photos, without being admitted into evidence, to be published to the jury. In essence, this court's concern is more with the trial court allowing the photos to be shown to the jury prior to their being admitted into evidence than with the fact that the record does not reflect the defense's objection at the time it occurred (since the record reflects elsewhere that counsel timely objected). The photos ultimately were admitted into evidence, but had they not been, it would have been prejudicial to appellant for the jury to have seen them. However, because we find that the photos were properly admitted, the court's error was harmless. See Crim.R. 52(A).

{¶ 33} Based on the above analysis, appellant's second assignment of error is overruled.

{¶ 34} In his third assignment of error, appellant argues that the evidence was insufficient to convict him of involuntary manslaughter because the length of time between the assault and the death was over eight years.

{¶ 35} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Watts,* Cuyahoga App. No. 82601, 2003-Ohio-6480, 2003 WL 22861978, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 273,

574 N.E.2d 492. "Sufficiency is a test of adequacy." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541.

{¶ 36} Under this standard, an appellate court does not conduct an exhaustive review of the record or a comparative weighing of competing evidence, or speculate as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in light most favorable to the prosecution." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "[T]he weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 37} R.C. 2903.04 governs involuntary manslaughter and provides:

{¶ 38} "(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

{¶ 39} Appellant was previously convicted of a felony, i.e., aggravated assault, in connection with this incident. The issue, therefore, in this case was whether the state presented sufficient evidence that the injuries inflicted on Payne by appellant were the proximate cause of his death. We are not persuaded by appellant's argument that the gap in time between the assault and Payne's death rendered the evidence insufficient to sustain his involuntary-manslaughter conviction. In the case appellant relies on, *State v. Bynum* (1942), 69 Ohio App. 317, 24 O.O. 86, 43 N.E.2d 636, the medical testimony as to the cause of death of the victim, who died 188 days after the defendant assaulted him, was that the death was a "possible result" of the assault, or that the death "might have resulted" or "could have resulted" from the assault. Here, the testimony was not uncertain. Specifically, Dr. Armstrong testified that Payne died as a result of "acute bronchopneumonia, due to remote blunt impact to head with skull and brain injury." That testimony alone was sufficient to sustain appellant's involuntary-manslaughter conviction. Moreover, appellant's expert, Dr. Schaffer, agreed with Dr. Armstrong's finding as to the cause of death. While Dr. Schaffer claimed that morphine played a "contributing role" in the death, he did not contest the gap in time or the causal connection between the manner of death and the cause of death. Accordingly, more than sufficient evidence existed to sustain appellant's involuntary-manslaughter conviction and his third assignment of error is overruled.

{¶ 40} For his fourth assignment of error, appellant argues that his conviction was against the manifest weight of the evidence, maintaining that the cause of death was a lethal dose of morphine in 2003, not the 1995 assault.

{¶ 41} In a manifest-weight analysis, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolve[s] conflicts in the evidence." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390, 678 N.E.2d 541 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387, 678 N.E.2d 541. See, also, id. at 390, 678 N.E.2d 541 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest-weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387, 678 N.E.2d 541.

{¶ 42} We are not persuaded by appellant's argument that Dr. Schaffer's testimony regarding the level of morphine in Payne's system at his time of death demonstrates that the jury clearly lost its way. Dr. Schaffer admitted that in his first report he agreed with Dr. Armstrong's finding as to Payne's cause of death. Dr. Schaffer testified that after he wrote his first report, he reviewed further records and made an error in reading them. In particular, Dr. Schaffer acknowledged that the amount of morphine in Payne's system was not in the "massive dosages" but was "a substantial dosage" that would "have to be listed as contributing cause of death." Dr. Schaffer then wrote a second report in which he opined that level of morphine in Payne's system was a contributing cause of death. Dr. Schaffer never testified that the morphine was a superseding cause of death; he claimed only that it played a "contributing role" in the death.

{¶ 43} Moreover, Dr. Armstrong testified that a blunt impact to Payne's head injured his brain and caused him to be in a persistent vegetative state. Dr. Armstrong also testified in regard to the toxicology report prepared in conjunction with the autopsy of Payne, noting that Payne had morphine in his system. She further testified that Payne had pneumonia at the time of his death and stated that the cause of death was "acute bronchopneumonia, due to remote blunt impact to head with skull and brain injury." Dr. Armstrong explained that a series of complications, including infections and the pneumonia, were linked to the head injury Payne suffered and that was the basis of her conclusion as to the manner of death.

{¶ 44} Therefore, the conviction was not against the manifest weight of the evidence, and appellant's fourth assignment of error is overruled.

{¶ 45} For his fifth and final assignment of error, appellant contends that the trial court improperly sentenced him to a term of incarceration greater than previously imposed as punishment for filing an appeal and exercising his right to a jury trial.

{¶ 46} Appellant has been sentenced on three separate occasions for this incident. The first sentence was after the 1995 bench trial for aggravated assault and was for three to five years. Appellant served his sentence and completed parole. Appellant was then sentenced a second time to seven years after the 2003 involuntary-manslaughter indictment and subsequent no-contest plea. He was given 1,437 days (i.e., four years) of credit for time already served. That conviction, however, was reversed by this court in 2005. After the conviction in this case, appellant was sentenced to eight years with credit for time served. Neither the sentencing entry nor transcript indicate whether the credit is for time served for the 1995 sentence or the 2004 sentence. Appellant alleges that based on the record, it is not clear whether he was sentenced to an additional one year or an additional five years.[3] In any event, for the reasons that follow, we modify appellant's sentence.

{¶ 47} In *Alabama v. Smith* (1989), 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865, the Unites States Supreme Court stated:

{¶ 48} "While sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment, see *Williams v. New York,* 337 U.S. 241, 245–249, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), we have recognized it must not be exercised with the purpose of punishing a successful appeal. [*North Carolina v.*] *Pearce* [ (1969) ] 395 U.S. [711, 723–725, 89 S.Ct. 2072, 23 L.Ed.2d 656]. 'Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial.' Id., at 725[, 89 S.Ct. 2072, 23 L.Ed.2d 656]. 'In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear.' Id. at 726[, 89 S.Ct. 2072, 23 L.Ed.2d 656]. Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by 'objective information * * * justifying the increased sentence.' *Texas v. McCullough,* 475 U.S. 134, 142[, 106 S.Ct. 976, 89 L.Ed.2d 104] (1986) (quoting *United States v. Goodwin,* 457 U.S. 368, 374[, 102

---

3. We take judicial notice that, contrary to appellant's assertions, the Department of Corrections and Rehabilitation has in fact calculated appellant's credit, which includes the aggravated assault.

S.Ct. 2485, 73 L.Ed.2d 74] (1982))." *Smith*, 490 U.S. at 798–799, 109 S.Ct. 2201, 104 L.Ed.2d 865.

{¶ 49} The sentence of seven years issued after appellant's no-contest plea was imposed after a full sentencing hearing and pre-*State v. Foster*, 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470, findings. In view of the lengthy history of this case, and because there are no reasons in the record justifying the increased sentence, we find it prudent to vacate this sentence and simply impose the original sentence pursuant to our authority under R.C. 2953.08(G).

{¶ 50} The conviction is affirmed; the sentence is modified to seven years with credit for time served for the aggravated assault and this incarceration. The trial court is ordered to issue an entry forthwith reflecting this modification and forward same to the Ohio Department of Corrections and Rehabilitation.

Judgment affirmed
as modified.

COONEY, P.J., concurs.

GALLAGHER, J., concurs separately.

SEAN C. GALLAGHER, Judge, concurring.

{¶ 51} I concur fully with the judgment and analysis of the majority. Nevertheless, I write separately to address two concerns.

{¶ 52} First, I believe the trial court may have been justified in increasing the sentence, but the record does not offer any explanation as to why the sentence was changed following the previous appeal. Had the trial court explained the increase, the presumption of vindictiveness might well have been overcome. This court recently outlined the standard regarding vindictive sentences in *State v. Glover*, Cuyahoga App. No. 88317, 2007-Ohio-2122, 2007 WL 1290165, when we held as follows:

A trial court violates the Due Process Clause of the Fourteenth Amendment when it resentences a defendant to a harsher sentence when motivated by vindictive retaliation. *North Carolina v. Pearce* (1969), 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656. A presumption of vindictiveness arises when the same judge resentences a defendant to a harsher sentence following a successful appeal. Id. However, that presumption does not apply when the resentencing judge is different than the original sentencing judge. *State v. Douse*, Cuyahoga App. No. 82008, 2003-Ohio-5238, 2003 WL 22251444, citing *State v. Gonzales*, 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903, ¶ 25; *Lodi v. McMasters* (1986), 31 Ohio App.3d 275, 277, 31 OBR 603, 511 N.E.2d 123.

{¶ 53} Second, I have serious concerns about the practice of appellate courts resentencing offenders following appeals where error is found. I acknowledge that appellate courts have the authority pursuant to R.C. 2953.08(G) to modify a sentence, and in this instance, because of judicial economy, I agree with my colleagues' decision to modify the sentence imposed as outlined in the majority opinion.

{¶ 54} Nevertheless, the fact that appellate courts have the authority to modify a sentence does not mean it is always in the best interest of justice to exercise that authority. I strongly believe that the trial courts are in the best position to correct errors in sentencing. The record in this case can best be described as "murky," and while I agree with my colleagues' decision to modify the sentence to the term originally imposed, a remand would allow the trial court the opportunity to clarify the appellant's sentence regarding credit for time served and to address the presumption of vindictiveness.