OPINION
{¶ 1} Defendant-appellant, Jermaine Summerour, appeals his conviction in Butler County Court of Common Pleas for abduction and robbery. We affirm the judgment of the trial court.
 {¶ 2} Appellant's conviction stemmed from an incident that occurred in the city of Fairfield around 11:00 p.m. on the evening of May 23, 2002. The victim, Randi Lindeman, was carrying groceries and walking toward the mailboxes of her complex when she passed a man walking in the opposite direction. The victim then heard footsteps rapidly approaching behind her. A man grabbed the victim from behind and began dragging her between two buildings.
 {¶ 3} A struggle ensued, wherein the assailant told the victim he would kill her if she screamed. The victim bit her assailant on the arm, but did not break the skin. The victim and her assailant engaged in a "tug of war" over her purse before the assailant grabbed the purse and ran between the buildings and into a wooded area. The contents of the victim's purse included a cell phone, credit cards, and $350 in cash.
 {¶ 4} Police received an emergency call reporting the incident from a resident in one of the nearby buildings around 11:22 p.m. A police canine unit responded and followed a scent to a parking lot of a tavern located below the wooded area between the buildings, but a search of the area yielded no results. The victim worked with police that evening to produce a composite sketch of her assailant.
 {¶ 5} The next day, the victim went to the Bureau of Motor Vehicles ("BMV") in Hamilton, Ohio to replace her license and testified that she saw her assailant at the BMV. The victim was not permitted by bureau employees to call the police. Nevertheless, the victim managed to observe the man's first name from an identification card being made at the BMV, and subsequently reported this information to the police.
 {¶ 6} Several days later, the victim identified appellant as her assailant from a photo array that included the photo that the BMV had taken of appellant. The victim's cell phone and credit cards were never used or recovered. Appellant was found guilty by a jury of robbery and abduction. Appellant appeals, raising three assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "Defendant-Appellant received ineffective assistance of counsel."
 {¶ 9} To prevail on a claim of ineffective assistance of counsel, an appellant must show both deficient performance by counsel and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. Deficient performance means that claimed errors were so serious that defense counsel was not functioning as the "counsel" that the Sixth Amendment guarantees; prejudice means that counsel's errors compromised the reliability of the trial. Id.
 {¶ 10} Appellant, who did not testify at trial, first argues that defense counsel was ineffective for "opening the door" to questions and argument regarding appellant's pre-arrest silence.
 {¶ 11} The issue arose when trial counsel cross-examined the investigating detective about her unsuccessful attempts to talk with appellant, emphasizing that appellant never made any incriminating admissions.
 {¶ 12} After reviewing the record in this case, we find that appellant has failed to rebut the presumption that, under the circumstances, trial counsel's action might be considered sound trial strategy and was within the wide range of reasonable assistance.Strickland at 689. The fact that another or better strategy might have been available does not amount to a breach of an essential duty to the client. See State v. Clayton (1980), 62 Ohio St.2d 45, 49.
 {¶ 13} Appellant next argues that trial counsel was ineffective for failing to request a special jury instruction on the unreliability of eyewitness testimony, and for failing to request a special jury instruction on the unreliability of cross-racial identification. These instructions were key, appellant argues, because of discrepancies in the victim's description and appellant's appearance. Specifically, the victim had described her assailant as having no facial hair and balding. Appellant pointed out that his BMV photo showed that he had a goatee and close-cropped or "razor-line" hair.
 {¶ 14} The victim in this case testified that she was certain that appellant was her assailant. The victim indicated that she was able to clearly see her assailant for ten to 15 seconds during the struggle over her purse. She also testified that she was able to observe her assailant the next day at the BMV, and select his photo from the photo array.
 {¶ 15} This is not a case in which no jury instruction was given on eyewitness identification. In fact, the identification instructions given by the trial court matched those provided in Ohio Jury Instructions ("OJI"), and covered such issues as the witness' degree of attention when she observed the offender, the accuracy of a prior description by the witness, and surrounding circumstances under which the witness identified the offender, including deficiencies.
 {¶ 16} The jury was aware of the need for finding the identification of appellant as the offender beyond a reasonable doubt, without the assistance of the special instructions. See State v. Philpot
(2001), 145 Ohio App.3d 231, 239.
 {¶ 17} Reviewing the record, we cannot say that counsel's failure to request a more detailed special instruction on eyewitness identification or cross-racial identification fell outside of the wide range of reasonable assistance. Further, based upon the particular facts of this case, we cannot find prejudice to appellant, given the sufficiency of the instruction. See State v. Clagg (Dec. 1, 1994), Franklin App. No. 94APA03-397.
 {¶ 18} Appellant's first assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "The trial court erred to the prejudice of defendant-appellant when it permitted improper final arguments by the state of Ohio."
 {¶ 21} Appellant asserts that the state argued facts not in evidence during its closing arguments in an attack on a key alibi witness.
 {¶ 22} The witness in question, Dionne Sudberry, testified that he picked up appellant in Hamilton at 10:30 p.m. on the evening of May 23 and drove straight to the Metropolis nightclub. Sudberry indicated that appellant was within his sight at the club during the time the robbery allegedly occurred.
 {¶ 23} Appellant's assignment of error focuses on the state's argument in closing that Sudberry, instead of being an alibi witness, had assisted appellant by driving him away from the scene of the robbery.
 {¶ 24} Both the state and the defense have wide latitude in closing on what the evidence has shown and what reasonable inferences may be drawn therefrom. State v. Stephens (1970), 24 Ohio St.2d 76, 82. A prosecutor may comment upon the testimony and suggest the conclusions to be drawn from it. State v. Hart (1994), 94 Ohio App.3d 665, 671. Prosecutors may not allude to matters not supported by admissible evidence. State v. Lott (1990), 51 Ohio St.3d 160, 166.
 {¶ 25} If the jury believed Sudberry's testimony that he was with appellant from 10:30 p.m. until sometime after the robbery occurred, and the jury believed the victim's testimony that appellant robbed her on or around 11 p.m., a reasonable inference could be drawn that Sudberry provided the means for appellant to commit the offense, leave the scene, and travel to the Metropolis nightclub. Evidence was presented that, depending upon the travel route, the drive from the victim's complex to the Metropolis nightclub would take a minimum of five minutes to a maximum of ten minutes.
 {¶ 26} While we caution parties not to stretch the latitude given in closing arguments, given the evidence before the jury, we do not find that the trial court erred in permitting the state to draw this inference in closing argument. Appellant's second assignment of error is overruled.
 {¶ 27} Assignment of Error No. 3:
 {¶ 28} "The conviction of defendant-appellant was against the manifest weight of the evidence."
 {¶ 29} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 30} We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment of a trial court on the weight of the evidence in a jury trial. Thompkins at 389.
 {¶ 31} Appellant argues that his conviction was against the manifest weight of the evidence because the victim's identification was unreliable and no other competent evidence existed for conviction.
 {¶ 32} We have previously listed some of the evidence presented to the jury in this case. In addition, the state also presented testimony from the victim and a police officer that the parking lot of the victim's complex was "well-lit."
 {¶ 33} The state also presented testimony that the victim described her assailant to police as a black male, 25 to 30 years of age, six feet, one inch tall, 200 pounds, athletic build, and well dressed, wearing a black shirt or v-neck sweater and black pleated pants. Evidence was also presented that appellant was 28 years old and six feet, one inch tall, and 180 pounds.
 {¶ 34} The state presented testimony from the victim that when she saw appellant at the BMV the day after the attack, he appeared nervous when he saw her and tried to hide the same arm she had bitten on her assailant. The victim also indicated that she immediately recognized appellant's photograph as her assailant when presented the photo array, and that she recognized appellant's voice when appellant spoke during a court proceeding.
 {¶ 35} Appellant pointed out in the cross-examination of the victim that she was able to see her assailant's face only briefly during the struggle. Appellant also emphasized that there were discrepancies in the victim's description pertaining to facial hair and hair length. Further, the victim acknowledged on cross-examination that appellant did not leave the BMV office after seeing her, but proceeded to conduct his business there.
 {¶ 36} The jury also was presented with the composite drawing the victim assisted the police in creating, and the photo array.
 {¶ 37} In appellant's case, appellant provided testimony from witnesses who stated that they saw appellant at the Metropolis nightclub on the evening in question. As we previously discussed, Sudberry indicated that he picked up appellant from a home in Hamilton and drove straight to Metropolis. Sudberry indicated that they walked around the club socializing, and appellant was within his sight for the first 45 minutes after they arrived.
 {¶ 38} Two other witnesses testified that they spent time with appellant at the nightclub that night. One indicated that she estimated that she first saw appellant around 11:30 p.m. This witness denied that she told police that she first saw appellant at 11:45 p.m.
 {¶ 39} Another witness indicated that he first saw appellant at 11:15 p.m. or so, but could not be sure if it might have been 11:30. This witness also testified that appellant was well dressed that evening and remembered that appellant was wearing dark, long-sleeved clothing.
 {¶ 40} After reviewing the entire record, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. Appellant's third assignment of error is overruled.
 {¶ 41} Judgment affirmed.
Young and Powell, JJ., concur.