OPINION
{¶ 1} Appellant was convicted following a jury trial of assault on a peace officer, a fourth degree felony, in violation of R.C. § 2903.13(A)(C)(3). Thereafter, Appellant timely filed his notice of appeal with this Court.
 {¶ 2} The matter is now before this Court pursuant to Appellant's counsel's September 30, 2004, no-merit brief and motion to withdraw as counsel. Appellant's counsel asserts in her motion to withdraw that she, "performed a conscientious examination of the case sub judice and cannot find anything in the record which might arguably support an appeal." (Sept. 30, 2004, Motion to Withdraw as Counsel.)
 {¶ 3} This Court has set forth the applicable procedure to follow when an appellant's counsel determines that an indigent's appeal is frivolous:
 {¶ 4} "3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
 {¶ 5} "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.
 {¶ 6} "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.
 {¶ 7} "6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.
 {¶ 8} "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." State v. Toney (1970), 23 Ohio App.2d 203,262 N.E.2d 419, syllabus.
 {¶ 9} In accordance with Toney, supra, this Court granted Appellant 30 days to raise any assignments of error and file a brief in support. (Oct. 7, 2004, Journal Entry.) To date, Appellant has not filed a brief or assignments of error. As such, we independently review the trial court's record pursuant toToney.
 {¶ 10} On Monday December 2, 2002, Appellant was being held in the Mahoning County jail on an unrelated offense. It was approximately noon and lunch was being served. A disagreement arose between Appellant and another inmate named Michael Kapsouris. Kapsouris allegedly stuck his finger in Appellant's food before handing him his lunch tray. Appellant refused the tray.
 {¶ 11} Thereafter, Appellant either dropped or threw the tray. A physical altercation ensued between Appellant and Mahoning County Deputy Robert Smith. Deputy Smith subsequently sought medical treatment for the injuries he sustained in the struggle. Appellant was later charged and convicted of assault on a peace officer in violation of R.C. § 2903.13(A)(C)(3).
 {¶ 12} R.C. § 2903.13(A) prohibits one from knowingly causing physical harm to another. R.C. § 2903.13(C)(3) makes assault a fourth degree felony if the victim of the offense is a peace officer in the performance of his official duties.
 {¶ 13} Appellant's counsel's no merit brief refers to a lack of argument to support a sufficiency of the evidence or manifest weight of the evidence argument. We will review both arguments.
 {¶ 14} An appellate court's standard in reviewing the sufficiency of the evidence in a criminal case is, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 15} In determining whether a verdict is against the manifest weight of the evidence, the reviewing court sits as a "thirteenth juror." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. The appellate court should review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses to determine, "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. A reversal based on the manifest weight of the evidence is only for the most, "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 16} The trial transcript reveals that there are essentially two versions of the incident. Deputy Smith testified to his version of the facts and Appellant gave his account. The only other witness to testify did not see the physical altercation. Thus, it was up to the jury to believe either Appellant or Deputy Smith.
 {¶ 17} Deputy Smith testified that he was working in the N/O pod on the day in question. Appellant was in the N pod, which is for inmates on medication for psychological problems. Kapsouris and another inmate were helping Deputy Smith deliver the lunch trays to the inmates in their rooms. Deputy Smith was overseeing the lunch delivery through a glass partition. (Tr., pp. 277-286.)
 {¶ 18} Deputy Smith witnessed Appellant get into an argument with Kapsouris. Kapsouris motioned to Smith, questioning him as to his course of action. Then Deputy Smith walked over to investigate the problem. Appellant was angry, and did not want to take the tray from Kapsouris. Deputy Smith did not know why Appellant refused to take the tray, but he did hear Appellant say something about taking his food from a "white boy". Appellant then picked up the tray and threw it toward Deputy Smith and Kapsouris. Deputy Smith ordered Appellant to get back so he could close his cell door. (Tr., pp. 287-288, 308.)
 {¶ 19} At that point, Appellant physically attacked Deputy Smith and tackled him against the wall. Deputy Smith was able to maneuver enough to get Appellant on his bunk and at that point Kapsouris got involved. However, Deputy Smith ordered Kapsouris to his room and he complied. (Tr., p. 289.)
 {¶ 20} Appellant continued to try to hit Deputy Smith. Appellant was also grabbing at his neck, so Deputy Smith held him down and hit him in the face to subdue him. Deputy Smith then told Appellant that the incident was over. However, Appellant warned Deputy Smith that he was going to "get" him. (Tr., p. 290.)
 {¶ 21} At that point, Deputy Smith exited Appellant's room in order to radio for assistance. Appellant followed him with his hands raised, and hit Deputy Smith in the face. Deputy Smith was subsequently able to get Appellant to the ground. (Tr., pp. 291-292.)
 {¶ 22} Deputy Smith sought medical treatment for injuries received during the dispute. He required five stitches for a laceration above his eye, and he also injured his hand during the incident. (Tr., p. 293.)
 {¶ 23} Deputy Belosic also testified for the state. He did not witness the altercation between Appellant and Deputy Smith. However, he was called to the N/O pod as backup that day, and he saw the cut above Deputy Smith's eye and noticed that his hand was swollen. (Tr., pp. 329-330.)
 {¶ 24} Appellant testified on his own behalf at trial. He indicated that he refused to take the lunch tray from Kapsouris because he put his fingers in Appellant's food. Appellant claims that he threw his tray on the floor; not at Deputy Smith. Appellant testified that this angered Deputy Smith, who pushed Appellant into his cell. (Tr., p. 343.)
 {¶ 25} Appellant claims that he told Deputy Smith to leave him alone. Instead, however, Appellant claims that Deputy Smith grabbed him and threw him on his bed; called him a "nigger"; and hit him three times. Appellant claims that he only threw his hands up to block Deputy Smith's blows. Appellant alleges that Deputy Smith then told Kapsouris to hold Appellant's arm. He said that Deputy Smith hit him repeatedly with his radio and his fists while Kapsouris was holding him. (Tr., p. 344.)
 {¶ 26} Appellant claims that Deputy Smith subsequently gave Kapsouris his keys instructing him to go back to his cell. Deputy Smith told Appellant to exit his cell while urging Appellant to hit him. Appellant refused, so Deputy Smith hit him in the nose, causing a spray of blood to spurt over Appellant and his room. At that point, Appellant concedes that he may have "lashed out" at Deputy Smith; but he is uncertain because he was dizzy and "seeing stars." (Tr., pp. 345-346.)
 {¶ 27} Appellant also claims that he was treated by a nurse who also looked at Deputy Smith and found nothing physically wrong with the deputy. No records were submitted supporting this assertion. Appellant also repeatedly asserted that Deputy Smith was not injured in the altercation. (Tr., pp. 346, 348-349.)
 {¶ 28} After a thorough review of the evidence in this case, we must concur with the conclusions of Appellant's counsel. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of assault of a peace officer were proven beyond a reasonable doubt based on Deputy Smith's testimony alone. He testified that Appellant attacked him and injured him while he was conducting his duties as a peace officer. Thus, Appellant's conviction was supported by sufficient evidence.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 29} Further, the jury could have easily found Appellant's version of the incident less credible than Deputy Smith's based solely on their roles as deputy and inmate. There is nothing before this Court reflecting any inconsistencies in Deputy Smith's story. Whereas Defendant's Exhibit 2, submitted at trial, reflects several inconsistencies in Appellant's story. This exhibit is a letter that Appellant wrote to the trial court.
 {¶ 30} Appellant indicates in this letter that he dropped his tray. However, he testified that he threw the tray at trial. In addition, Appellant states in his letter that he was "beat up" by four or five deputies. There was no reference to these additional deputies during Appellant's trial testimony. (Def.'s Exh. 2.)
 {¶ 31} Appellant repeatedly asserted at trial that Deputy Smith was not injured. However, both Deputy Smith and Deputy Belosic testified to the contrary. Further, Deputy Smith's medical records reflect that he injured his hand and had a laceration above his right eye. (State's Exh. 1.)
 {¶ 32} Based on the foregoing, Appellant's conviction was not against the manifest weight of the evidence. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 33} For purposes of this Court's Toney review, it should also be noted that Appellant asked for an acquittal at trial, which was overruled. (Tr., p. 364.)
 {¶ 34} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. Based on the facts and analysis set forth previously, Appellant's motion for acquittal was appropriately overruled because his conviction was supported by sufficient, credible evidence.
 {¶ 35} It should also be noted that Appellant's trial counsel objected during jury selection to the small number of minorities on the potential jury panel. However, Appellant's counsel thereafter specifically asked whether Appellant's race would affect the jurors' ability to be fair and impartial. None of the potential jurors indicated that race would affect their ability to be fair and impartial. (Tr., pp. 156-164.)
 {¶ 36} Appellant's trial counsel also objected to the trial court's dismissal of one potential juror, Miss Heck, for cause. (Tr., p. 183.)
 {¶ 37} Under R.C. § 2945.25(B) and Crim.R. 24(B)(9), a person called as a juror may be challenged for cause if the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state.
 {¶ 38} "[B]ut no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused,if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." (Emphasis added.) State v. Gleason (1989),65 Ohio App.3d 206, 209, 583 N.E.2d 975.
 {¶ 39} A ruling of the trial court on a challenge for cause will not be overturned unless it appears that the trial court abused its discretion. State v. Wilson (1972),29 Ohio St.2d 203, 58 O.O.2d 409, 280 N.E.2d 915; State v. Grubb (1988),44 Ohio App.3d 94, 541 N.E.2d 476.
 {¶ 40} Potential juror Heck initially indicated that she would not be a fair juror. She believed that the deputies would have a tendency to "stick together," and she also indicated that she has an initial tendency not to believe the police. (Tr., pp. 91,104, 106.) Notwithstanding her statements, however, Appellant's counsel indicated that he felt she was "rehabilitated." (Tr., p. 183.)
 {¶ 41} The trial court disagreed and concluded, "Miss Heck doesn't give the Court the appearance of being attentive and fair and impartial enough to sit on this jury." (Tr., p. 182.)
 {¶ 42} Upon review of the record, the trial court did not abuse its discretion in granting the state's motion to dismiss Miss Heck for cause because it was not satisfied that she would render an impartial verdict according to the law and evidence. Thus, there was no error worthy of pursuing on appeal.
 {¶ 43} Finally, Appellant's disagreement with his trial counsel should be noted herein. Appellant repeatedly indicated his displeasure with his trial counsel's decision not to call several witnesses at trial. Appellant claimed to have witnesses to support his version of the altercation. However, his attorney chose not to call these witnesses to testify indicating that he did not feel they would be helpful. Appellant memorialized his displeasure with his counsel's decision at least four times on the record. (Tr., pp. 9-12, 184, 248, 398-399.)
 {¶ 44} The trial court also noted Appellant's disagreement with his counsel's decision on this issue. However, it concluded that the decision as to which witnesses to present at trial was up to counsel.
 {¶ 45} On review, the trial court was correct. Strategic trial decisions do not generally constitute ineffective assistance of counsel. State v. Carver (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965. A decision whether or not to call certain witnesses at trial is a strategic or tactical decision.State v. Pimental, 8th Dist. No. 84034, 2005-Ohio-384, ¶ 17. In addition, attorneys are presumed competent. Thus, judicial scrutiny of counsel's performance must be highly deferential.Strickland v. Washington (1984), 466 U.S. 668, 689,104 S.Ct. 2052. As such, Appellant's disagreement with his trial counsel's decision does not constitute error on appeal.
 {¶ 46} As for Appellant's sentencing, he faced a prison term of six to eighteen months for his assault of a peace officer conviction pursuant to R.C. § 2929.14(A)(4). The trial court sentenced him to the maximum eighteen months in prison. (Sentencing Tr., p. 14.)
 {¶ 47} R.C. § 2929.14(C) provides in part:
 {¶ 48} "[T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 49} A trial court must make findings and give supporting reasons on the record at the sentencing hearing to support the imposition of maximum sentences before this Court can uphold the imposition of a maximum sentence. State v. Edmonson (1999),86 Ohio St.3d 324, 329, 715 N.E.2d 131. It is not enough for these to be stated in the court's written journal entry. State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.
 {¶ 50} The sentencing court in the instant matter noted that it was concerned about protecting the public and law enforcement personnel and that the shortest sentence would demean the seriousness of the offense. The trial court also found on the record that Appellant poses a great likelihood of recidivism based on his prior assault conviction and his, "very, very significant lack of remorse." (Sentencing Tr., p. 14.)
 {¶ 51} Based on the foregoing, the trial court made the requisite findings and stated its reasons in support on the record at Appellant's sentencing hearing. Thus, there was no error in the trial court's decision to impose the maximum sentence.
 {¶ 52} In conclusion, and after reviewing the trial court's record, this Court hereby affirms the trial court's decision in its entirety. Appellant's appeal is wholly frivolous. State v.Toney (1970), 23 Ohio App.2d 203, 262 N.E.2d 419, syllabus. Accordingly, Appellant's counsel's motion to withdraw as counsel is granted.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.