JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Shawn Collins appeals from his conviction for three counts of aggravated robbery and one count of felonious assault and firearm specifications for these counts. For the reasons set forth below, we affirm.
 {¶ 2} Defendant, a juvenile, was charged with aggravated robbery and felonious assault in connection with an incident allegedly involving Gerald Henderson and Anthony Henderson. Following a hearing pursuant to R.C. 2152.12, the matter was subsequently transferred to the General Division of the Court of Common Pleas. Defendant was subsequently indicted for three counts of aggravated robbery with one and three-year firearm specifications and one count of felonious assault with one and three-year firearm specifications. Defendant pled not guilty, and the matter proceeded to a jury trial on January 29, 2007.
 {¶ 3} The state presented testimony from Anthony Henderson, Gerald Henderson, Tenisha Murphy, Veronica Murphy, Shalonda White and Cleveland Police Officer Terancita Jones Green.
 {¶ 4} Anthony Henderson testified that on September 1, 2006, he and his cousin Gerald planned to visit Gerald's then-girlfriend, Tenisha Murphy. Murphy was not home, so they waited for her at the home of another friend, Shalonda White. The boys sat on White's porch with several other individuals, and a group of 20 or 30 other young men stood on a nearby corner. Tenisha arrived home and joined the group on White's porch, and several of the boys from the corner came over to talk to *Page 4 
her. According to Anthony, Tenisha subsequently left the scene, and an individual approached with two guns and demanded that Anthony and Gerald give him their belongings. The boys refused, and the assailant began to slap them and struck Anthony in the head with his gun. Anthony then gave him $30, and Gerald gave him $10 and his cell phone/two-way radio. Kenny Evans attempted to stop the gunman, but was unsuccessful. Defendant then asked if Anthony had a cell phone. Anthony indicated that he did not, and the gunman again struck him.
 {¶ 5} After the gunman left the scene, the boys walked to Tenisha's house to use her telephone, and Gerald told Anthony that he had seen the assailant's face and knew who had robbed them. Another person from the larger group, who had braids, then confronted them and said, "You seen what?" Gerald replied that he had seen nothing, and the individual with braids then demanded that they strip. Tenisha's mother then came out of her house, and the second assailant ran off. Mrs. Murphy agreed to take the boys home, but, as they started to leave, they noticed their cousin in the street and left the area in his vehicle. As they drove off, gunshots were fired.
 {¶ 6} On cross-examination, Anthony admitted that he could not see the assailant and that, during the juvenile proceedings, he identified defendant as the assailant because Gerald had identified defendant. He also stated that Tenisha left the porch just before the gunman arrived.
 {¶ 7} Gerald Henderson testified that they waited at Shalonda's, and a bunch *Page 5 
of boys were nearby on the corner. After Tenisha arrived, Gerald and Anthony conversed on the porch with the girls and Gerald subsequently used the two-way radio function of his cell phone to contact his cousin for a ride home. An individual with two guns, identified at trial as defendant, then approached and demanded that Gerald and Anthony give him what they had in their pockets. At this time, Tenisha fled to her home.
 {¶ 8} According to Gerald, defendant was dressed in black, and his face was partially covered. Gerald's cousin then contacted him through the two-way radio, and defendant grabbed this device from Gerald. He then struck the boys several times. Gerald further testified that another individual with braids approached, took one of defendant's guns and assisted defendant.
 {¶ 9} After the assailants left, Gerald and Anthony walked to Tenisha's house to use the phone. Gerald stated that he knew who had robbed them, and the individual with braids then confronted them again, stating, "You seen what?" This second assailant then demanded that the boys strip. One of Anthony's friends named Kenny interceded, and the second assailant then left.
 {¶ 10} Gerald further testified that he used the two-way radio function of his missing cell phone to locate it, and he and his aunt later retrieved the device from an individual named "Chris."
 {¶ 11} On cross-examination, Gerald admitted that he initially could not identify defendant as the assailant, but he then stared at him and "visualized" what had *Page 6 
happened.
 {¶ 12} Tenisha Murphy testified that she had previously dated defendant and has known him for approximately two years. On the day of the attack, she had seen defendant dressed in black. Later, while she, Shalonda and the Hendersons were conversing on Shalonda's porch, a group of 20 to 30 other young men were on a nearby corner. Defendant came over to the porch three or four times and asked someone where Gerald and Anthony were from. A short time later, defendant came back to the porch with a scarf partially covering his face. He produced two guns from his pocket and said, "You all ain't from around here," then demanded that they give him their belongings. Tenisha ran from the porch and called the police.
 {¶ 13} She next observed defendant slapping Gerald and Anthony and taking their money. According to Tenisha, Kenny Evans approached and said, "Shawn, stop." Defendant said, "Don't say my name," and pointed the gun at Evans.
 {¶ 14} On cross-examination, Tenisha denied that she was testifying simply to get back at defendant. She acknowledged that, during the robbery, she recognized defendant by his voice.
 {¶ 15} Shalonda White testified that before the incident, she observed defendant wearing black pants and a black shirt. He was originally with the group of boys on the corner, but came over to the porch several times. The assailant then approached with a black scarf partially covering his face and robbed Gerald and Anthony. Shalonda fled with Tenisha, but the girls watched from across the street. *Page 7 
According to Shalonda, Kenneth Evans approached defendant during the incident and called him "Shawn."
 {¶ 16} Veronica Murphy, Tenisha's mother, testified that, after the incident, she was going to take Gerald and Anthony home, but someone came to pick them up. As they drove off, Mrs. Murphy heard gunshots.
 {¶ 17} Cleveland Police Officer Terancita Jones Green testified that she is a school resource officer at Glenville High School and that Shalonda, Tenisha and Anthony attend this school. She further stated that Anthony told her about the incident, and she instructed him to fill out an incident report. She further stated that Anthony and one of the girls were afraid of retaliation from defendant's sister.
 {¶ 18} The trial court denied defendant's motion for acquittal, and defendant presented testimony from Lashonda Barnett, Gregory Clayton, Chalina Hamilton, and Kenneth Lee Evans.
 {¶ 19} Lashonda Barnett testified that defendant was wearing short pants and a white T-shirt, and the assailant was wearing long black pants, a dark hoodie, a red cap and a black scarf. He robbed Gerald and Anthony, and a second person with braids confronted them a short time later. She acknowledged that Kenny Evans was on the porch during the robbery. He said something to Anthony but Lashonda could not hear it.
 {¶ 20} Gregory Clayton and Chalina Hamilton both testified that defendant was wearing short pants and a white T-shirt and was not the assailant. They also stated *Page 8 
that, on the night of the incident, shots came from a car traveling on Irvington and did not come from the people gathered at or near Shalonda's porch.
 {¶ 21} Kenneth Evans also testified that defendant was not dressed in black and was not the assailant. He stated that Tenisha and Shalonda ran off when the gunman arrived. Evans did not know the gunman, but he acknowledged that he spoke to him and asked that he not "mess with" Anthony.
 {¶ 22} Defendant was subsequently convicted of three counts of aggravated robbery (Count 1 as to Gerald Henderson, and Counts 3 and 4 as to Anthony Henderson) and felonious assault (upon Anthony Henderson), plus the specifications. The trial court indicated that it considered all of the statutory factors and then sentenced defendant to a total of 20 years on the charges, plus three years on the specifications and five years of post-release control. Defendant now appeals and assigns 11 errors for our review.
 {¶ 23} Defendant's first assignment of error states:
 {¶ 24} "Defendant was denied due process of law when he was tried and convicted of offenses which were not bound over from the juvenile court."
 {¶ 25} The Juvenile Division of the Court of Common Pleas has exclusive original jurisdiction concerning any child who, on or about the date specified in the complaint, is alleged to be a delinquent child for committing an act that would be an offense if committed by an adult. R.C.2151.23. In order for a child to be tried as an adult, the matter must be bound over by the Juvenile Division to the General Division *Page 9 
pursuant to R.C. 2152.12 and Juv.R. 30. See State v. Golphin (1998),81 Ohio St.3d 543, 692 N.E.2d 608. The juvenile court retains exclusive jurisdiction in the absence of a valid bindover. State v. Wilson (1995),73 Ohio St.3d 40, 652 N.E.2d 196.
 {¶ 26} In State v. Fryerson (Feb. 10, 2000), Cuyahoga App. No. 71683, this court addressed the circumstance when the juvenile is bound over in connection with offenses against one victim, but indicted for offenses against a different victim. This court held that as long as the indicted offense arose out of the offense that was the basis of the transfer, the juvenile could be indicted on a different offense, but where the juvenile was indicted on offenses that did not arise out of the bound over offenses, the trial court lacked jurisdiction. Similarly, inState v. Bruno, Cuyahoga App. No. 77202, 2001-Ohio-4227, the juvenile was charged with murder and bound over, then indicted for aggravated murder. In rejecting a claim that the common pleas court exceeded its jurisdiction, this court noted that the indictment of defendant for aggravated murder was derived from the charged act of murder, which was the basis of the transfer. This court stated that "as long as the indicted offense arose out of the offense that was the basis of the transfer, the juvenile could be indicted on a different offense, but where the juvenile was indicted on offenses that did not arise out of the bound over offenses, the trial court lacked jurisdiction." Id. In support of this conclusion, the court relied upon R.C. 2151.23(H) which states in pertinent part:
 {¶ 27} "(H) If a child who is charged with an act that would be an offense if *Page 10 
committed by an adult was fourteen years of age or older and under eighteen years of age at the time of the alleged act and if the case is transferred for criminal prosecution pursuant to section 2152.12 of the Revised Code, the juvenile court does not have jurisdiction to hear or determine the case subsequent to the transfer. The court to which the case is transferred for criminal prosecution pursuant to that section has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court, including, but not limited to, jurisdiction to accept a plea of guilty or another plea authorized by Criminal Rule 11 or another section of the Revised Code and jurisdiction to accept a verdict and to enter a judgment of conviction pursuant to the Rules of Criminal Procedure against the child for the commission of the offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for thecommission of another offense that is different from the offensecharged." (Emphasis added.)
 {¶ 28} See, also, State v. White, Jefferson App. No. 01-JE-3, 2002-Ohio-5226.
 {¶ 29} In this matter, the complaint filed in the juvenile court alleged that defendant committed aggravated robbery with firearm specifications upon Gerald Henderson and aggravated robbery with firearm specifications upon Anthony Henderson. At the subsequent hearing conducted pursuant to R.C. 2152.12, the evidence indicated that defendant hit Gerald Henderson in the face and hit Anthony *Page 11 
with one of the guns. The subsequent indictment charged defendant with two counts of aggravated robbery as to Gerald Henderson, two counts of aggravated robbery as to Anthony Henderson, and one count of felonious assault upon Anthony Henderson. We therefore conclude that the indicted offense arose out of the offense that was the basis of the transfer. The indicted offenses are derived from the same acts, that were the basis of the bindover proceedings.
 {¶ 30} This assignment of error lacks merit.
 {¶ 31} Defendant's second assignment of error states:
 {¶ 32} "Defendant was denied his Sixth Amendment rights when the trial court arbitrarily dismissed jurors for cause without allowing any questioning by defense counsel."
 {¶ 33} As an initial matter, we note that Crim.R. 24 provides in relevant part:
 {¶ 34} "(A) Examination of jurors. Any person called as a juror for the trial of any cause shall be examined under oath or upon affirmation as to his qualifications. The court * * * may itself conduct the examination. * * *."
 {¶ 35} Further, a person called as a juror may be challenged for cause where he discloses by his answers that he cannot be a fair and impartial juror. R.C. 2313.42(J). Similarly, a juror may be challenged for cause where he is possessed of a state of mind evincing enmity or bias toward the defendant or the state, R.C. 2945.25(B); Crim. R. 24(B)(9), or is otherwise unsuitable for any other cause to serve as a juror. R.C.2945.25(C); Crim.R. 24(B)(14). *Page 12 
 {¶ 36} Implicit in Crim.R. 24 is a trial court's authority to sua sponte dismiss a juror when it determines that a juror is not impartial or otherwise unsuitable for service. See State v. Midwest Pride IV(1998), 131 Ohio App.3d 1, 721 N.E.2d 458.
Moreover, "[a] trial court enjoys broad discretion in determining a juror's ability to be impartial." State v. Dennis (1997),79 Ohio St.3d 421, 427, 683 N.E.2d 1096, citing State v. Williams (1983),6 Ohio St.3d 281, 288, 452 N.E.2d 1323; Berk v. Matthews (1990), 53 Ohio St.3d 161,168, 559 N.E.2d 1301. A trial court's ruling with respect to a potential juror will not be disturbed on appeal unless it is manifestly arbitrary.State v. Tyler (1990), 50 Ohio St.3d 24, 31, 553 N.E.2d 576.
 {¶ 37} In this matter, defendant challenges the dismissal of Juror McCain, Juror Eppich, and Juror Martin. The record discloses that defendant suggested that defendant McCain be excused (Tr. 113), so he cannot now claim error in this regard. State v. Woodruff (1983),10 Ohio App.3d 326, 327, 462 N.E.2d 457. The record further discloses that Juror Eppich stated that he has problems with minors being tried as adults and would have a problem with ignoring the fact that a minor is on trial. (Tr. 189-190). The trial court was therefore within its discretion in dismissing this juror. State v. Midwest Pride IV, supra. Finally, Juror Martin stated that he would not believe testimony of juveniles. (Tr. 223). He was therefore properly dismissed. Accord State v. Jones, Mahoning App. No. 03 MA 261, 2005-Ohio-6930; R.C. 2945.25(B) (a person may be challenged for cause where he has a state of mind evincing enmity or bias toward the defendant or the state); Crim.R. 24(B)(9) *Page 13 
(same).
 {¶ 38} We find no abuse of discretion in this matter. This assignment of error is therefore without merit.
 {¶ 39} Defendant's third assignment of error states:
 {¶ 40} "Defendant was denied a fair trial by reason of judicial and prosecutorial misconduct."
 {¶ 41} Within this assignment of error, defendant complains that the trial court erred in alluding to gang activity and in allowing evidence that defense witness Chalina Hamilton was in a gang. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. A witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is probative of bias.United States v. Abel (1984), 469 U.S. 45, 105 S.Ct. 465,83 L.Ed.2d 450. In this instance, the trial court asked Hamilton, "Are you all in the same group?" This question was relevant to the issue of whether Hamilton may have had a motive to lie for defendant. We find no abuse of discretion.
 {¶ 42} Defendant additionally complains that the trial court erred in allowing the prosecuting attorney to introduce evidence that Tenisha Murphy and Gerald Henderson were harassed in connection with this matter. However, the trial court could properly find that questions concerning the victim's fear of defendant are *Page 14 
relevant to the issue of credibility. State v. Fortson (Aug. 2, 2001), Cuyahoga App. No. 78240.
 {¶ 43} Defendant next complains that the trial court was biased and partial. It is well-settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215.
 {¶ 44} Here, defendant complains that the trial judge informed a witness that she, rather than the prosecuting attorney, had forced the witness to appear to testify. Pursuant to R.C. 2317.21, the trial court has authority to issue a writ commanding the sheriff to bring the witness to court to give his testimony and answer for the contempt. We therefore cannot conclude that the trial court's remarks were erroneous or manifested partiality.
 {¶ 45} Defendant next complains that the trial court demonstrated bias by admonishing defendant's trial counsel for making statements in connection with his objections. A trial court is permitted to prohibit speaking objections in the presence of the jury. State v. Sellers, Cuyahoga App. No. 88535, 2007-Ohio-4681. We find no abuse of discretion.
 {¶ 46} Defendant also complains that the trial court erred in restricting his trial attorney's cross-examination of Tenisha Murphy as to whether she had become pregnant by defendant. While such evidence may have been relevant to the issue of bias, it was nonetheless subject to Evid.R. 403 considerations. See State v. Eben *Page 15 
(1992), 81 Ohio App.3d 341, 610 N.E.2d 1109. In light of the young age of this witness and the absence of evidence that she and defendant had an intimate relationship, such evidence appears to be unfairly prejudicial. In any event, we conclude that defendant had a sufficient opportunity to cross-examine this witness as to bias without going into this area.
 {¶ 47} Finally, defendant complains that his trial counsel was not permitted to cross-examine Gerald Henderson regarding his juvenile adjudications, yet the state was permitted to inquire about Kenneth Evans' juvenile adjudications. Under a former version of R.C. 2151.358, evidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding. Effective October 12, 2006, however, the records shall be sealed if there has not yet been an adjudication in the matter, but where the child has been adjudicated, the records are sealed only upon motion and hearing. See 2005 Ohio HB 137; R.C. 2151.356. We therefore find no error in this particular instance as Henderson, unlike Evans, had not yet been adjudicated under the charging complaint.
 {¶ 48} Finally, defendant asserts that the trial court's cumulative errors deprived him of a fair trial, however, the cumulative error doctrine does not apply to cases that are not marked by multiple instances of harmless error. State v. Garner (1995), 74 Ohio St3d 49,1995-Ohio-168, 656 N.E.2d 623. Accordingly, defendant cannot claim cumulative error in this instance. *Page 16 
 {¶ 49} This assignment of error is without merit.
 {¶ 50} Defendant's fourth assignment of error states:
 {¶ 51} "Defendant was denied his constitutional right of confrontation and cross-examination."
 {¶ 52} Defendant next complains that the trial court violated his constitutional rights in prohibiting him from cross-examining Tenisha as to whether she had gotten pregnant by defendant.
 {¶ 53} Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.Delaware v. Van Arsdall (1986), 475 U.S. 673, 682, 106 S.Ct. 1431,89 L.Ed. 2d 674. We find no error in connection with the trial court's ruling in this matter. There was no evidence that Tenisha and defendant had an intimate relationship, and defendant's trial counsel was permitted to question Tenisha about her feelings about her break-up with defendant and whether she stated that she would "get" defendant for breaking up with her.
 {¶ 54} This assignment of error is without merit.
 {¶ 55} Defendant's fifth assignment of error states:
 {¶ 56} "Defendant was denied due process of law when the trial court ordered that address of witnesses not be disclosed." *Page 17 
 {¶ 57} In State v. Williams (1986), 23 Ohio St.3d 16, 490 N.E.2d 906, the Ohio Supreme Court noted that, pursuant to Crim. R. 16(B)(1)(e), a trial court may forbid disclosure of the names and addresses of witnesses "if the prosecuting attorney certifies to the court that to do so may subject the witness or others to physical or substantial economic harm or coercion." Certification is not satisfied by the prosecutor merely stating his or her conclusion that a witness might be subject to harm, but requires the state's reasons for requesting witness protection to appear on the record. Id.
 {¶ 58} In this matter, the prosecuting attorney noted that defendant's mother had contacted certain witnesses. Defendant's mother then spoke on the record and denied contacting witnesses, but indicated that her cousin was related to one of the victims' relatives and spoke to this relative. She also admitted that her daughter and Anthony Henderson had "an incident" at school on the previous day. From the foregoing, the state adequately met the requirements of the rule and the trial court's action was proper under Crim.R. 16(B)(1)(e).
 {¶ 59} This assignment of error is without merit.
 {¶ 60} Defendant's sixth assignment of error states:
 {¶ 61} "Defendant was denied due process of law when the court gave an incomplete instruction on felonious assault and in effect directed a verdict of guilty."
 {¶ 62} Defendant next complains that the trial court erred when it instructed the jury as follows: *Page 18 
 {¶ 63} "Where the defendant pointed a gun at another, knowing it to be unloaded, making no attempt to pull the trigger or use the gun as a deadly weapon, the defendant may be found guilty of felonious assault."
 {¶ 64} "The act of pointing a deadly weapon at another, coupled with a threat which indicates intention to use such weapon, is sufficient evidence to convict a defendant of the offense of felonious assault."
 {¶ 65} In State v. Green (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, the Ohio Supreme Court held:
 {¶ 66} "The act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault.'"
 {¶ 67} The Court explained:
 {¶ 68} "[T]he additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances. Thus, the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)."
 {¶ 69} In this matter, defendant seeks to parse the instruction and have us find that the first sentence is an erroroneous instruction. We consider the instructions as a whole, however, because a single challenged jury instruction may not be reviewed *Page 19 
piecemeal or in isolation, but must be reviewed within the context of the entire charge. See, State v. Hardy (1971), 28 Ohio St.2d 89,276 N.E.2d 247; State v. Fields (1984), 13 Ohio App.3d 433, 469 N.E.2d 939;State v. Duncan, Cuyahoga App. No. No. 84587 2005-Ohio-6241.
 {¶ 70} By application of the foregoing, we conclude that the trial court properly instructed the jury in this instance. State v.Green, supra.
 {¶ 71} This assignment of error is without merit.
 {¶ 72} Defendant's seventh assignment of error states:
 {¶ 73} "Defendant was denied due process of law when his motion for acquittal was overruled."
 {¶ 74} Crim.R. 29 provides in pertinent part:
 {¶ 75} "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 76} Upon review of a ruling on Crim.R. 29(A), this court construes the evidence in a light most favorable to the state. An entry denying the motion is proper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable *Page 20 
doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, citing State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
 {¶ 77} In this matter, defendant contends that the evidence is insufficient to establish that he is the perpetrator because the witnesses could not adequately identify him.
 {¶ 78} Here, Shalonda White and Tenisha Murphy established that defendant was dressed in black pants and a black shirt prior to the incident. Tenisha Murphy identified him as the assailant and noted that she recognized his voice. Tenisha and Shalonda heard Kenneth Evans call the assailant "Shawn." Gerald identified defendant as the assailant. During the incident, defendant produced a gun and demanded money, and began to strike the boys with the gun. This evidence, if believed, is such that reasonable minds can reach different conclusions as to whether defendant was in fact the assailant. We therefore conclude that the trial court properly denied the motion for acquittal in this matter.
 {¶ 79} This assignment of error is overruled.
 {¶ 80} Defendant's eighth assignment of error states:
 {¶ 81} "Defendant was denied due process of law when the court penalized defendant for exercising his constitutional right to a trial."
 {¶ 82} Defendant complains that the trial judge was involved in plea negotiations and retaliated against defendant for rejecting the plea offer.
 {¶ 83} The Ohio Supreme Court has not adopted a per se rule finding all *Page 21 
judicial participation in plea negotiations unconstitutional, but such participation is closely scrutinized for coercion. State v. Byrd (1980),63 Ohio St.2d 288, 407 N.E.2d 1384.
 {¶ 84} Further, the court cannot punish an accused for rejecting an offered plea bargain and exercising his right to proceed to trial. SeeState v. O'Dell (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220. To determine vindictiveness, we look to see whether the record affirmatively shows retaliation as a result of the rejected plea bargain. State v.Warren (1998), 125 Ohio App.3d 298, 307, 708 N.E.2d 288. Vindictiveness on the part of a sentencing court is not presumed merely because the sentence imposed is harsher than one offered in plea negotiations.State v. Mitchell (1997), 117 Ohio App.3d 703, 691 N.E.2d 354.
 {¶ 85} In this matter, after close scrutiny of the record, we cannot accept defendant's claims. In particular, we note that the trial judge stated:
 {¶ 86} "It's puzzling to me. Your client is 16 years old. He has the possibility of being sent to prison for 28 years [sic] and you don't even want to talk to the prosecutor?" (Tr.9).
 {¶ 87} Later, the court noted that defendant had rejected a plea agreement under which he could have received a sentence of between four and six years, and the court informed him that he faced a potential sentence of 58 years.
 {¶ 88} We find nothing coercive as the court simply pointed out the possible maximum term defendant faced and put upon the record that defendant had rejected *Page 22 
the plea offer. (Tr. 172-173).
 {¶ 89} As to the claim of vindictiveness, we find absolutely no evidence that the trial court retaliated against defendant. In particular, we note that there was no indication that the court in any way begrudged defendant his right to trial. The sentence, though lengthy, was less than the maximum, and there was no guarantee that it would be within the limits discussed in connection with the plea offer.
 {¶ 90} This claim lacks merit.
 {¶ 91} Defendant's ninth assignment of error states:
 {¶ 92} "Defendant was denied due process of law when defendant was sentenced to consecutive sentences without any consideration of the statutory criterial for sentencing."
 {¶ 93} Trial courts are vested with discretion to impose a prison term within the statutory range, but in exercising its discretion, the trial court must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender, [and] statutes that are specific to the case itself."State v. Mathis, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855. There is no requirement in R.C. 2929.12 that the trial court state on the record that it has considered the statutory criteria concerning seriousness and recidivism. State v. Lewis, Lake App. No. 2006-L-224,2007-Ohio-3014. *Page 23 
 {¶ 94} Applying the foregoing, we find no abuse of discretion. The sentence was within the statutory range, and the trial court was not required to state sentencing factors on the record.
 {¶ 95} Defendant's tenth assignment of error states:
 {¶ 96} "Defendant was denied due process of law when the court failed to merge various offenses for which defendant was convicted."
 {¶ 97} Aggravated robbery and felonious assault are not allied offenses of similar import. State v. Preston (1986), 23 Ohio St.3d 64,491 N.E.2d 685; State v. Allen (1996), 115 Ohio App.3d 642,685 N.E.2d 1304; State v. Ferguson (1991), 71 Ohio App.3d 342, 594 N.E.2d 23;State v. Loparo, Cuyahoga App. No. 88229, 2007-Ohio-2783. Accordingly, they may not be merged pursuant to R.C. 2941.25.
 {¶ 98} This assignment of error is overruled.
 {¶ 99} Defendant's eleventh assignment of error states:
 {¶ 100} "Defendant was denied effective assistance of counsel."
 {¶ 101} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus. To show prejudice, *Page 24 
a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie,81 Ohio St.3d 673, 674, 1998-Ohio-343, 693 N.E.2d 267. "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v.Henderson, Cuyahoga App. No. 88185, 2007-Ohio-2372.
 {¶ 102} In this assigned error, defendant claims that his trial counsel rendered ineffective assistance when he failed to do the following: 1) ask for a proposed jury instruction on identification; 2) file a motion to suppress Tenisha Murphy's identification of defendant and Anthony Henderson's identification of defendant; 3) failed to renew the motion for a judgment of acquittal at the close of all of the evidence; and 4) failed to object to the portion of the prosecuting attorney's closing argument in which he said that Tenisha and the other witnesses were telling the truth.
 {¶ 103} As to the first claim, we note that the jury was aware of the need for finding the identification of defendant as the offender beyond a reasonable doubt, without the assistance of the special instructions. See State v. Philpot (2001), 145 Ohio App.3d 231, 239, 762 N.E.2d 443;State v. Summerour, Butler App. No. CA2002-12-312, 2003-Ohio-6783. In any event, the court instructed the jury to consider the opportunity that the witness had to see, or hear, or know the truth of the *Page 25 
facts and circumstances concerning the things to which they had testified, so we find no error in this matter.
 {¶ 104} As to the second claim, we conclude that there was no basis for
suppressing Tenisha Murphy's identification as she knew defendant well and testified with certainty that she observed him earlier in the day dressed in black pants and a black shirt, that the assailant was wearing black pants and a black shirt, that she recognized defendant's voice during the incident, and that Kenneth Evans called the assailant "Shawn." Counsel was not required to file a futile motion. In addition, we conclude that counsel ably cross-examined Anthony Henderson and had him concede in open court that he identified defendant as the gunman simply because Gerald had done so and also had Anthony state that Tenisha was not on the porch when the gunman arrived. We cannot say that this strategy, as opposed to a suppression of identification testimony, was ineffective.
 {¶ 105} As to the third claim, we have considered the motion for acquittal herein so we find no error in connection to the non-renewal of the motion.
 {¶ 106} As to the fourth claim, we note that in State v. Draughn
(1992), 76 Ohio App.3d 664, 602 N.E.2d 790, this court stated:
 {¶ 107} "In closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, `The evidence supports the conclusion that these witnesses are telling the truth.' He *Page 26 
cannot say, `I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See State v.Smith (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses." Id.
 {¶ 108} In this matter, the cited provisions do not amount to vouching for the witnesses. We cannot say that defendant's trial counsel committed a prejudicial error in failing to object to these statements.
 {¶ 109} This assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 27 
 MARY EILEEN KILBANE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR *Page 1